Good morning, Your Honor. May it please the Court, my name is Stuart Tisdale and I represent Kevin St. Hill. We are appealing his sentence. He pleaded guilty to one count of distribution. The offense consisted of selling 20 oxycodone pills to an undercover police officer. All other things being equal, he would have been sentenced to about two and a half years on that. Nonetheless, he was sentenced to seven years. The extra four years came from the say-so of someone known as CI3. The person known as CI3 brought that information to light in the form of a police report which the Court read. The 2,555 pills that translate into those extra four years were seen by no police officer and they were seen by no judicial officer. We're not appealing the Court's credibility determination on CI3's testimony, but we are appealing the judge's ruling in the sense that the judge construed Guideline 1B1.3 too broadly. The danger of a broad construction of that guideline is that it allows people to be held in prison for a very discernible amount of time because you can see the time on the sentencing table, for a very discernible amount of time based on something for which they were not convicted. That situation seems counterintuitive. You seem to be contending that the common scheme or plan is limited to situations in which there is a conspiracy, action with accomplices. I'm not sure that there's support for that notion in the cases. Well, in a footnote in U.S. v. Wood, the question is why isn't it permissible for the district judge to rely on common scheme of plan and course of conduct in the context of this case? Well, other than the footnote, which indicates that these different words have different meanings. And the statutory construction canons indicate that different words should be taken as having different meanings. And the standard common scheme or plan is reserved for those situations where the defendant is being sentenced. The question is, does something that somebody else has done in a conspiracy or some other joint action situation, should that be held against the defendant so the defendant is sentenced for what the other person did? And then the question is, well, did what the defendant do, is that part of a common scheme, a common modus operandi, does involve common victims with what this other person, this co-defendant did? And the commentary on the guideline cites as an example for that language a multi-defendant case where that's exactly the question. That should defendant A be sentenced for what co-defendant B did? The other branch, I see that phrase in the guidelines, a single course of conduct or a common scheme or plan, has two parts to it. Now the footnote in U.S. Wood, which makes sense, indicates that a single course of conduct is reserved for cases where the defendant is charged and pleaded guilty to something unilateral, something he did by himself. So the question of whether something else that he did should be something that he's sentenced for is determined by whether the something else he did meets the language of a single course of conduct. Now in the commentary under single course of conduct creates an example of somebody who's been acting alone, a unilateral action. So it just seems as a matter of good reading, statutory construction, not to mention the footnote in U.S. v. Wood, that these two parts of that phrase, a single course of conduct or common scheme or plan, are meant for two different situations. And to take the second, the common scheme or plan, and apply it to the first results in a bad fit. There might be some similarity, some conceptual similarity in a sense, but it's the wrong words. The court's using the wrong words. Mr. Tisdale, on that, as I understand the guideline, the guideline offers it can be relevant conduct if it's part of a common decision, he found that C.I.3's testimony and dealings or statements satisfied both parts. In other words, he used the word and. So he said he easily, the court easily concludes that C.I.3's dealings should be included as relevant conduct as part of a common Why do we even care whether he was right on the first half of that as long as he was right on the second part of it? Well, the judge does say that, and the judge does refer to the standard as a whole, and he quotes the whole standard. But if you look at page 21, where he goes into a little more detail about the criteria he's using to make this decision, he says on page 21, quote, the sentencing guidelines in the First Circuit have pointed to a number of factors, the nature of the offense, common victims, common accomplices, common purpose, similar modus operandi. Those are those words that gloss comes from the common scheme or purpose, half of the standard. So there is that line, there is that quotation where he cites the whole standard, but the way he handles it seems to be focused on the second part, the common scheme. And if you use that standard So what factor did he rely on that was inappropriate under the course of conduct standard? Well, it's easier, I guess I'll put it this way, it's just easier to link this other conduct out here, this attenuated relevant conduct, it's just easier to see it as related to the offense of conviction under that language than it would be under the right language. So there's no factor that he relied on that was inappropriate under the course of conduct standard? I'm not sure what you, I'm not sure what you mean by inappropriate factor, Your Honor. Well, he relied on various factors to find that the defendant fit within this overall standard. You're arguing that he was limited to course of conduct. I'm asking you, assuming you're right about that, what factor, what factual aspect of this did he rely on that fell outside of the course of conduct standard? Well, when he focused on the language where the word common is featured, so he's looking for commonalities. It is possible, it's arguable, certainly, I mean, it would be foolish to deny it isn't, to see commonalities between what the defendant did on June 26th, selling those 20 pills, and a lot of other things that he might have done because there are commonalities. They could be seen to be commonalities. Same person, same area in the state of Maine, because that's where he lived. So anything he did there would be, good or bad, would be done in that part of the state. The same drug, oxycodone, the same milligram of pills, which is determined by the pharmaceutical company, of course, so there were commonalities. And if you look at something at a high enough level of generality, you can find commonalities in lots of things. But aren't they all, to answer Judge Dysker's, aren't every single one of those things you just mentioned relevant to determining whether something is part of the same course of conduct? No. Well, let me give you an example. I'm selling guns on one day, and on another day I'm selling stolen cars. Wouldn't we say that's probably not the same course of conduct? But if I changed it to say I'm selling guns on one day, and in common with that I'm selling guns on the second day, isn't that more likely to be part of the same course of conduct? You're using the wrong standard. Excuse me, excuse me. That would depend on how closely one looks at that language. It would depend on how closely one looks at the similarities, because you can look at, depending on all the circumstances in that scenario, depending on how closely one looks at those factors, you could find distinctions, I'm sure. In the case that we have now, in the case of Barr, the more specific, the more specific close view of the offense would find distinctions. May I continue, please? Is your time, I think your time is up. In response to Judge... Well, yes, but don't take too long responding. All right. It comes down to how closely you look at it. It comes down to how closely you look at it. In this case, the offense of conviction is a street-level sale to somebody, not a wholesale deal. It's not a fronting deal. It's a sale to a customer, one time, see you later. The 2,555 pills, it's a whole different level of offense. It's a whole different offense. Well, now you're arguing it's not part of the same course of conduct, which you've argued in your brief, but that's not the issue we were discussing. Well, if I may, there were two points. One is that the judge used the wrong standard. As a practical matter, it could make a difference because there are different standards. The second point is that the judge also linked that attenuated relevant conduct, not just to the offense of conviction, which is what the guidelines call for, but the offense of conviction plus other relevant conduct. And if you look at bottom of page 22, top of page 23, the factors that he cites as to why this 2,555 pills are relevant conduct, six of them come from the other relevant conduct. Only one of them comes from the offense of conviction. Thank you. Thank you, Your Honor. Ms. McGaughy. I'm Margaret McGaughy for the United States. If I may at first make a factual clarification, which may help bring this case in perspective, and that is to explain why the 76 grams of oxycodone are uncharged conduct rather than charged conduct, and it's a matter of timing. This defendant was arrested in the summer of 2012. He was indicted in October 2012. But CI3, who is the basis of the information for the 76 grams, did not begin to cooperate until December of 2012. And, in fact, her counseled proffer was made two days before the defendant pleaded guilty. So that explains why this was never charged. Second, with respect to the claim that the defendant now makes that there is a significant difference between same course of conduct or common scheme or plan, and that Judge Woodcock relied on the wrong prong of that, in the government's reading of the record, that was not the defendant's claim below. The court will read the record for itself. But as I read the record, his claim below was that CI3 was not reliable, and that prompted a 33-page written opinion explaining why she was. To answer Judge Dyke's question about whether they really are different prongs of a different standard and one operates to the exclusion of the other, I could find nothing in the case law that says that conduct must be cubby-holed into either same course of conduct or common scheme or plan to the exclusion of the other. Quite the contrary. The first sentence in Application Note 9 to 1B1.3 says that the two are closely related concepts. Second, this court's opinions have basically treated that phrase as a single phrase said in one breath. I have read no opinion that splits them out and says, if it's not one, it can't be the other. Third, your most recent Vasquez opinion, Judge Kayada, as I understood your interpretation of the guideline, it was to say that there must simply be sufficient link between the relevant conduct and the charged conduct. So that is not the narrow statutory construction argument that the defendant makes. That, the government interprets to be a much broader standard, which makes sense in light of the totality of the circumstances test that applies to it overall. Fourth, there are other circuits that have interpreted this same guideline and they have specifically said that the factors that relate to same course of conduct may be applied to common scheme or plan. In other words, they can be transposed against each other. Finally, I would simply like to summarize the factors that are detailed in the government's brief with respect to the commonalities, similarities, links, whatever you want to call them, between the conduct that formed the conviction and the information from CI3. It was involvement by the defendant personally in all of the transactions. It involved the same drugs in the same quantities, 20 pills at a time, in the same dosages, 30 milligrams, for the same price, between $26 and $30, in the same geographic area, in the same time frame of a six-month period in 2012, by two people who both knew the defendant by the nickname BB, and by two people who both described BB as a significant drug trafficker in that area of Maine. And that is looking only to the commonalities between the charged conduct and CI3. It has nothing to do with CI1, CI4, CI3582, or the anonymous caller. But when you put those totalities of circumstances together, there is nothing about the relevant conduct determination that is clear error. Unless the court has other questions, the government will urge the court to affirm. I have maybe not a question, but a question, maybe ruminations of my mind about a problem that I see. If most of these drug dealers anywhere would probably meet all those criteria you've talked about, but if you charge one transaction and have to prove it beyond a reasonable doubt, you can then bring all the other actions they take in selling drugs in the pre-sentence report, for whatever reason you don't charge them, whether it is because it's after or before, all the reasons you validly have, and you have a result that would include crimes that have not been charged, in which the defendant has not had the benefit of a reasonable doubt trial. Is that what we have? Well, part of my answer, Judge Troy, is why I thought it was important that the court would know the timing of the other information in this case. Second, that, I think, is what the relevant conduct guideline contemplates. Third, if this defendant had really wanted personally to challenge the authenticity of the information from CI3, he could have insisted on an evidentiary hearing, and he didn't. He wouldn't have a jury trial. He would not have a jury trial. The standard of proof is different? Absolutely. Absolutely. But the difference in the standard of proof is what permeates the guidelines. Everything about the guidelines is a preponderance standard, not a proof beyond a reasonable doubt standard. So the objection that I understand you have – I didn't say objections. I was saying I'm thinking about this. You may end up with an objection. The expressed concern – I'm working my way in that direction. Dan, Judge Torwaya, with all respect, you would have to buck a very long line of precedent applying a preponderance of the evidence standard to every determination that applies under the guidelines, and I doubt you want to do that. Thank you for the advice. With no further questions, the government will rest. Thank you. May I just briefly, please? I think we'll rest on your brief. Thank you.